FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 01 2015

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,              )
                                       )
                 Plaintiff,            )      CRIMINAL NO. 15-4268 KG
                                       )
        vs.                            )      Counts 1, 2, 3 and 5: 18 U.S.C. §
                                       )      1959(a)(1): Violent Crimes in Aid of
                                       )      Racketeering (Murder) and 18 U.S.C. § 2;
ANGEL DELEON,                          )
JOE GALLEGOS,                          )      Counts 4, 7 and 8:  18 U.S.C. §
EDWARD TROUP, a.k.a. "Huero            )      1959(a)(5): Violent Crimes in Aid of
Troup,"                                )      Racketeering (Conspiracy to Murder);
LEONARD LUJAN,                         )
BILLY GARCIA, a.k.a. "Wild Bill,"      )      Count 6: 18 U.S.C. § 1959(a)(6): Violent
EUGENE MARTINEZ, a.k.a. "Little        )      Crimes in Aid of Racketeering
Guero,"                                )      (Conspiracy to Commit Assault Resulting
ALLEN PATTERSON,                       )      in Serious Bodily Injury).
CHRISTOPHER CHAVEZ, a.k.a.             )
"Critter,"                             )
JAVIER ALONSO, a.k.a. "Wineo,"         )
ARTURO ARNULFO GARCIA, a.k.a.          )
"Shotgun,"                             )
BENJAMIN CLARK, a.k.a. "Cyclone,"      )
RUBEN HERNANDEZ,                       )
JERRY ARMENTA, a.k.a. "Creeper,"       )
JERRY MONTOYA, a.k.a. "Boxer,"         )
MARIO RODRIGUEZ, a.k.a. "Blue,"        )
TIMOTHY MARTINEZ, a.k.a. "Red,"        )
MAURICIO VARELA, a.k.a. "Archie,"      )
a.k.a. "Hog Nuts,"                     )
DANIEL SANCHEZ, a.k.a. "Dan Dan,"      )
GERALD ARCHULETA, a.k.a.  "Styx,"      )
a.k.a. "Grandma,"                      )
CONRAD VILLEGAS, a.k.a. "Chitmon,"     )
ANTHONY RAY BACA, a.k.a.  "Pup,"       )
ROBERT MARTINEZ, a.k.a. "Baby          )
Rob,"                                  )
ROY PAUL MARTINEZ, a.k.a.              )
"Shadow," and                          )
CHRISTOPHER GARCIA,                    )
                                       )
                 Defendants.           )

I N D I C T M E N T

The Grand Jury charges:

## INTRODUCTORY ALLEGATIONS

## THE RACKETEERING ENTERPRISE, SYNDICATO DE NUEVO MEXICO GANG

1.      At various times relevant to this Indictment, the defendants, **ANGEL DELEON,**
**JOE GALLEGOS, EDWARD TROUP, a.k.a. "Huero Troup," LEONARD LUJAN,**
**BILLY GARCIA, a.k.a. "Wild Bill," EUGENE MARTINEZ, a.k.a. "Little Guero,"**
**ALLEN PATTERSON, CHRISTOPHER CHAVEZ, a.k.a. "Critter," JAVIER ALONSO,**
**a.k.a. "Wineo," ARTURO ARNULFO GARCIA, a.k.a. "Shotgun," BENJAMIN CLARK,**
**a.k.a. "Cyclone," RUBEN HERNANDEZ, JERRY ARMENTA, a.k.a. "Creeper," JERRY**
**MONTOYA, a.k.a. "Boxer," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY**
**MARTINEZ, a.k.a. "Red," ANTHONY RAY BACA, a.k.a.  "Pup," ROBERT**
**MARTINEZ, a.k.a. "Baby Rob," ROY PAUL MARTINEZ, a.k.a. "Shadow," MAURICIO**
**VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," DANIEL SANCHEZ, a.k.a. "Dan Dan,"**
**GERALD ARCHULETA, a.k.a.  "Styx," a.k.a. "Grandma," CONRAD VILLEGAS, a.k.a.**
**"Chitmon," and CHRISTOPHER GARCIA,** and others were members/prospects/associates
of the Syndicato de Nuevo Mexico Gang (SNM), a criminal organization whose
members/prospects/associates engaged in acts of violence and other criminal activities,
including, murder, kidnapping, attempted murder, conspiracy to manufacture/distribute
narcotics, and firearms trafficking.  At all relevant times, SNM operated in the District of New
Mexico and elsewhere.

2.      SNM, including its leadership, membership, prospects, and associates, constituted
an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of
individuals associated in fact that engaged in, and the activities of which, affected interstate

commerce. The enterprise constituted an ongoing organization whose members/prospects/associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## GENERAL BACKGROUND

3.      The Syndicato de Nuevo Mexico ("SNM"), Spanish for Syndicate of New Mexico, is a powerful and violent prison gang, which controlled drug distribution and other illegal activities within the New Mexico penal system, and was also involved in street level narcotics trafficking. It was formed in the early 1980s at the Penitentiary of New Mexico after a prison riot at the penitentiary in February, 1980. During the prison riot, twelve correctional officers were taken hostage and several of them were seriously assaulted and raped by inmates. Thirty-three inmates were killed during the riot and more than two hundred were injured.

4.      Following the prison riot, the SNM Gang expanded throughout the New Mexico penal system and has boasted of as many as 500 members since the early 1980s. The SNM Gang was comprised of approximately 250 members, who are known as "hermanos," "brothers," "carnales," "dons," "jefes," "big hommies," or "Zia manos" and who controled the gang.  The SNM operated under a "panel" or "mesa" (Spanish for table) of leaders who issued orders to subordinate gang members.

5.      Despite being imprisoned and being closely scrutinized by prison officials, SNM Gang leaders managed to convey orders to SNM Gang members and associates throughout the prison system and outside the prison system through a variety of means, including secret notes, called "kites," or "welas," coded letters, and messages conveyed by complicit visitors.  When SNM Gang members or associates completed their sentences and rejoined their communities, they were expected to remain loyal to the SNM Gang and work to further the goals of the SNM

Gang outside the prison environment. Members who fail to show continued loyalty to the gang were disciplined in various ways, to include murder and assaults. One of the significant goals of the SNM Gang was to control and profit from narcotics trafficking.

6.     In addition to exerting its control in the New Mexico penal system, the SNM Gang also operated on the streets of New Mexico by intimidating and influencing smaller New Mexico Hispanic gangs for the purpose of establishing a larger network for the SNM's illegal activities. If a gang did not accede to the SNM Gang's demands, the SNM Gang assaulted or killed the gang's members who were not in custody as well as those members who were incarcerated within the New Mexico penal system. In addition to intimidation through direct assaults, the SNM Gang was also able to assert control and influence over gang members outside the penal system because gangs did not want their members outside the penal system to be assaulted or killed, and because the gang members knew that, if they are incarcerated, they would need the protection of the SNM Gang while they served their sentences.

7.     The SNM Gang had been and continues to be engaged in a fierce and violent war with rival gangs, to include the Barrio Azteca, Los Carnales, Sureños, and Burqueños gangs. Within the prison system, this rivalry manifested itself in beatings and stabbings, which often resulted in death. Outside the prison system, the SNM Gang fought for control of territory in which to conduct narcotics trafficking and other crimes, as well as to recruit and influence non-gang members. In addition to fighting for control over numerous illegal activities and using violence and terror for the purpose of enriching themselves, the SNM Gang also engaged in violence simply to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, to gain notoriety and show its

superiority over others, and to send a message to others that it was strong, powerful and not to be provoked.

8. The SNM Gang sought to maintain its reputation for being strong and powerful and maintained its membership to continue functioning as an organization in prison and on the streets. If the SNM Gang was perceived as being weak, then rival gangs would challenge and assault its members and take over its territory. This could have caused the gang to lose membership and eventually dissolve. The SNM Gang maintained a large membership and a reputation for being strong, powerful and dominant so that rival gangs would think twice before they challenged it and victims/witnesses would think twice about assisting authorities with any prosecution attempt against it. This allowed the gang to grow in strength, thrive in its criminal activity, and dominate its territory. A member of the SNM Gang was expected to seek out and beat, stab, or shoot rival gang members. Similarly, a member of the SNM Gang was expected to confront and attack any suspected law enforcement informants, cooperating witness, homosexuals, or sex offenders.

9. SNM Gang members identifed themselves with the Zia symbol and the letters "SNM" or "S," which represented the "Syndicato de Nuevo Mexico" or "Syndicato" which is Spanish for Syndicate. SNM Gang members also utilized the number "19" which represents the 19th letter of the alphabet, "S," and "505," which corresponds with the area code for the greater Albuquerque area. The SNM Gang claimed the entire state of New Mexico as its territory, which was broken into four geographical regions: North, South, East, and West. As with the numbers "19," and "505," the letters "S" or "SNM," the Zia symbol, and the Spanish word "Syndicato" were commonly, but not exclusively, displayed by SNM Gang members in tattoos,

graffiti, drawings, and on clothing, as a way of displaying affiliation, loyalty, and commitment to the gang.

## ROLES OF THE DEFENDANTS

10.     The defendants participated in the operation and management of the enterprise. Defendants **ARTURO ARNULFO GARCIA, a.k.a. "Shotgun," GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma," BENJAMIN CLARK, a.k.a. "Cyclone," MARIO RODRIGUEZ, a.k.a. "Blue," ANTHONY RAY BACA, a.k.a. "Pup," ROBERT MARTINEZ, a.k.a. "Baby Rob," ROY PAUL MARTINEZ, a.k.a. "Shadow," and DANIEL SANCHEZ, a.k.a. "Dan Dan,"** were the leaders of the enterprise who directed or delegated the power to direct other members of the enterprise to carry out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

11.     Under the direction and leadership of the enterprise, defendants **ANGEL DELEON,     JOE GALLEGOS, EDWARD TROUP, a.k.a. "Huero Troup," LEONARD LUJAN, BILLY GARCIA, a.k.a. "Wild Bill," EUGENE MARTINEZ, a.k.a. "Little Guero," ALLEN PATTERSON, CHRISTOPHER CHAVEZ, a.k.a. "Critter," JAVIER ALONSO, a.k.a. "Wineo," RUBEN HERNANDEZ, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "Boxer," TIMOTHY MARTINEZ, a.k.a. "Red," MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," and CONRAD VILLEGAS, a.k.a. "Chitmon,"** were members who participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

## PURPOSES OF THE SYNDICATO DE NUEVO MEXICO GANG

12.     The purposes of the SNM Gang enterprise included the following:

a.  Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

b.  Promoting and enhancing the enterprise and the activities of its members and associates through criminal acts, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, and other criminal activities;

c.  Keeping victims, potential victims, witnesses, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d.  Protecting the enterprise's members and associates who committed crimes by hindering, obstructing, and preventing law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders;

e.  Providing information to members and associates of the enterprise, including those who were incarcerated, for the purpose of committing acts of violence, robbery, distribution of controlled substances, and other offenses;

f.  Providing financial support and information to SNM Gang members and associates, including those members and associates who were incarcerated.

**MEANS AND METHODS OF THE ENTERPRISE**

13.     Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the SNM Gang were the following:

a.     Members and associates of the enterprise committed, conspired, attempted, and threatened to commit acts of violence, including murders and assaults, to protect and expand the enterprise's criminal operations.

b.     To generate income, members and associates of the enterprise trafficked in controlled substances and extorted narcotic traffickers.

c.     To perpetuate the enterprise, members and associates of the enterprise discussed the membership, rules, and enforcement of the rules of the SNM Gang; the status of SNM Gang members and associates who were arrested or incarcerated; the discipline of SNM Gang members; SNM Gang members' encounters with law enforcement; the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, including murder, drug distribution, possession of firearms, and assault, as well as ways to conceal these crimes.

d.     It was further part of the means and methods of the enterprise that members and associates of the enterprise concealed from law enforcement the way in which the enterprise conducted its affairs; the locations where enterprise members discussed and conducted the affairs of the enterprise; the locations where enterprise members stored and possessed weapons and

narcotics; and the locations where enterprise members maintained the proceeds from narcotics trafficking.

e.     Members of the SNM Gang also used violence to impose discipline within the SNM Gang. It was further part of the means and methods of the enterprise that the defendants and other members and associates of the SNM Gang agree to distribute narcotics and commit other crimes, and to conceal their criminal activities by obstructing justice, threatening and intimidating witnesses, and other means.

14.     The SNM gang enterprise through its members and associates, engaged in racketeering activity as defined 18 U.S.C. §§ 1959(b)(1) and 1961(1), that is acts and threats involving murder in violation of New Mexico law and offenses involving trafficking in narcotics in violation of 21 U.S.C. §§ 841 and 846.

Count 1

Murder of F.C.

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about March 26, 2001, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANGEL DELEON, JOE GALLEGOS, EDWARD TROUP, a.k.a. "Huero Troup,"**

**LEONARD LUJAN,** and **BILLY GARCIA, a.k.a. "Wild Bill,"** did unlawfully, knowingly,

and intentionally murder F.C., in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

<u>Notice of Special Findings</u>

The grand jury repeats and re-alleges the accusations of Count 1 of the Indictment.

With respect to Count 1, the Grand Jury makes the following special findings that the

defendant, **ANGEL DELEON:**

a. was 18 years of age or older at the time of the offense charged in Count 1 (18 U.S.C. § 3591(a));

b. intentionally killed F.C. (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of F.C. (18 U.S.C. § 3591 (a)(2)(B));

d. committed the offense after substantial planning and premeditation to cause the death of F.C. (18 U.S.C. § 3592(c)(9)).

With respect to Count 1, the Grand Jury makes the following special findings that the

defendant, **JOE GALLEGOS:**

a. was 18 years of age or older at the time of the offense charged in Count 1 (18 U.S.C. § 3591(a));

b. intentionally killed  F.C. (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of F.C.  (18 U.S.C. § 3591 (a)(2)(B));

d. committed the offense after substantial planning and premeditation to cause the death of F.C.  (18 U.S.C. § 3592(c)(9)).

With respect to Count 1, the Grand Jury makes the following special findings that the

defendant, **EDWARD TROUP:**

a. was 18 years of age or older at the time of the offense charged in Count 1 (18 U.S.C. § 3591(a));

b. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and F.C. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

c. committed the offense after substantial planning and premeditation to cause the death of F.C. (18 U.S.C. § 3592(c)(9)).

With respect to Count 1, the Grand Jury makes the following special findings that the defendant, **LEONARD LUJAN**:

a. was 18 years of age or older at the time of the offense charged in Count 1 (18 U.S.C. § 3591(a));

b. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and F.C. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

c. committed the offense after substantial planning and premeditation to cause the death of F.C. (18 U.S.C. § 3592(c)(9)).

With respect to Count 1, the Grand Jury makes the following special findings that the defendant, **BILLY GARCIA**:

a. was 18 years of age or older at the time of the offense charged in Count 1 (18 U.S.C. § 3591(a));

b. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and F.C. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

c.  has a previous conviction for a violent felony involving firearms (18 U.S.C. § 3592(c)(2));

d.  has previous convictions of other serious offenses (18 U.S.C. § 3592(c)(4));

e.  committed the offense after substantial planning and premeditation to cause the death of F.C. (18 U.S.C. § 3592(c)(9)).

### Count 2

### Murder of R.G.

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about March 26, 2001, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **LEONARD LUJAN, BILLY GARCIA, a.k.a. "Wild Bill," EUGENE MARTINEZ, a.k.a. "Little Guero," ALLEN PATTERSON,** and **CHRISTOPHER CHAVEZ, a.k.a. "Critter,"** did unlawfully, knowingly, and intentionally murder R.G., in violation of  NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

### Notice of Special Findings

The grand jury repeats and re-alleges the accusations of Count 2 of the Indictment.

With respect to Count 2, the Grand Jury makes the following special findings that the defendant, **LEONARD LUJAN:**

a.  was 18 years of age or older at the time of the offense charged in Count 2 (18

U.S.C. § 3591(a));

b.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and R.G. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

c.  committed the offense after substantial planning and premeditation to cause the death of R.G. (18 U.S.C. § 3592(c)(9)).

With respect to Count 2, the Grand Jury makes the following special findings that the

defendant, **BILLY GARCIA**:

a.  was 18 years of age or older at the time of the offense charged in Count 2 (18 U.S.C. § 3591(a));

b.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and R.G. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

c.  has a previous conviction for a violent felony involving firearms, that is: Aggravated Assault With a Deadly Weapon (18 U.S.C. § 3592(c)(2));

d.  has previous convictions of other serious offenses (18 U.S.C. § 3592(c)(4));

e.  committed the offense after substantial planning and premeditation to cause the death of R.G. (18 U.S.C. § 3592(c)(9)).

With respect to Count 2, the Grand Jury makes the following special findings that the

defendant, **EUGENE MARTINEZ**:

a.  was 18 years of age or older at the time of the offense charged in Count 2 (18 U.S.C. § 3591(a));

b.  intentionally killed R.G. (18 U.S.C. § 3591(a)(2)(A));

    c.   intentionally inflicted serious bodily injury that resulted in the death of R.G. (18 U.S. C. § 3591 (a)(2)(B));

    d.   committed the offense after substantial planning and premeditation to cause the death of R.G. (18 U.S.C. § 3592(c)(9)).

With respect to Count 2, the Grand Jury makes the following special findings that the

defendant, **ALLEN PATTERSON**:

    a.   was 18 years of age or older at the time of the offense charged in Count 2 (18U.S.C. § 3591(a));

    b.   intentionally killed  R.G. (18 U.S.C. § 3591(a)(2)(A));

    c.   intentionally inflicted serious bodily injury that resulted in the death of R.G. (18 U.S. C. § 3591 (a)(2)(B));

    d.   has a previous conviction for a violent felony involving firearms, that is: Conspiracy to Commit Murder (18 U.S.C. § 3592(c)(2));

    e.   committed the offense after substantial planning and premeditation to cause the death of R.G. (18 U.S.C. § 3592(c)(9)).

With respect to Count 2, the Grand Jury makes the following special findings that the

defendant, **CHRISTOPHER CHAVEZ**:

    a.   was 18 years of age or older at the time of the offense charged in Count 2 (18 U.S.C. § 3591(a));

    b.   intentionally killed  R.G. (18 U.S.C. § 3591(a)(2)(A));

    c.   intentionally inflicted serious bodily injury that resulted in the death of R.G. (18 U.S. C. § 3591 (a)(2)(B));

    d.   has a previous conviction for a violent felony involving firearms, that is: Aggravated Battery With a Deadly Weapon (18 U.S.C. § 3592(c)(2));

    e.   committed the offense after substantial planning and premeditation to cause the death of R.G. (18 U.S.C. § 3592(c)(9)).

Count 3

Murder of F.S.

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about June 17, 2007, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **JAVIER ALONSO, a.k.a. "Wineo," EDWARD TROUP, a.k.a. "Huero Troup," ARTURO ARNULFO GARCIA, a.k.a. "Shotgun," BENJAMIN CLARK, a.k.a. "Cyclone,"** and **RUBEN HERNANDEZ**, did unlawfully, knowingly, and intentionally murder F.S., in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

Notice of Special Findings

The grand jury repeats and re-alleges the accusations of Count 3 of the Indictment.

With respect to Count 3, the Grand Jury makes the following special findings that the defendant, **JAVIER ALONSO**:

    a. was 18 years of age or older at the time of the offense charged in Count 3 (18 U.S.C. § 3591(a));

    b. intentionally killed F.S. (18 U.S.C. § 3591(a)(2)(A));

    c. intentionally inflicted serious bodily injury that resulted in the death of F.S. (18 U.S.C. § 3591 (a)(2)(B));

    d. has a previous conviction of other serious offenses, that is: First Degree Murder

(18 U.S.C. § 3592(c)(3));

    e.   committed the offense after substantial planning and premeditation to cause the death of F.S. (18 U.S.C. § 3592(c)(9)).

With respect to Count 3, the Grand Jury makes the following special findings that the defendant, **EDWARD TROUP**:

    a.   was 18 years of age or older at the time of the offense charged in Count 3 (18 U.S.C. § 3591(a));

    b.   intentionally killed  F.S. (18 U.S.C. § 3591(a)(2)(A));

    c.   intentionally inflicted serious bodily injury that resulted in the death of F.S. (18 U.S. C. § 3591 (a)(2)(B));

    d.   committed the offense after substantial planning and premeditation to cause the death of F.S. (18 U.S.C. § 3592(c)(9)).

With respect to Count 3, the Grand Jury makes the following special findings that the defendant, **ARTURO ARNULFO GARCIA**:

    a.   was 18 years of age or older at the time of the offense charged in Count 3 (18 U.S.C. § 3591(a));

    b.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and F.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    c.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and  F.S. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

    d.   has previous convictions of other serious offenses (18 U.S.C. § 3592(c)(4));

    e.   has previous convictions of two felony drug offenses, that is: Distribution of a Controlled Substance and Trafficking a Controlled Substance (18 U.S.C. § 3592(c)(10));

      f.   committed the offense after substantial planning and premeditation to cause the death of F.S. (18 U.S.C. § 3592(c)(9)).

With respect to Count 3, the Grand Jury makes the following special findings that the defendant, **BENJAMIN CLARK**:

      a.   was 18 years of age or older at the time of the offense charged in Count 3 (18 U.S.C. § 3591(a));

      b.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and F.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

      c.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and  F.S. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

      d.   has a previous conviction for a violent felony involving firearms, that is: Armed Robbery (18 U.S.C. § 3592(c)(2));

      e.   committed the offense after substantial planning and premeditation to cause the death of F.S. (18 U.S.C. § 3592(c)(9)).

With respect to Count 3, the Grand Jury makes the following special findings that the defendant, **RUBEN HERNANDEZ**:

      a.   was 18 years of age or older at the time of the offense charged in Count 3 (18 U.S.C. § 3591(a));

      b.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and F.S. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

      c.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in

the offense, such that participation in the act constituted a reckless disregard for human life and  F.S. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

d.  has a previous conviction for a violent felony involving firearms, that is: Aggravated Burglary With a Deadly Weapon (18 U.S.C. § 3592(c)(2));

e.  committed the offense after substantial planning and premeditation to cause the death of F.S. (18 U.S.C. § 3592(c)(9)).

<u>Count 4</u>

<u>Conspiracy to Murder J.M.</u>

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico and elsewhere,  as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "Boxer," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," ANTHONY RAY BACA, a.k.a.  "Pup," MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," and DANIEL SANCHEZ, a.k.a. "Dan Dan,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder J.M., in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

<u>Count 5</u>

<u>Murder of J.M.</u>

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "Boxer," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," ANTHONY RAY BACA, a.k.a. "Pup," MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts,"** and **DANIEL SANCHEZ, a.k.a. "Dan Dan,"** did unlawfully, knowingly and intentionally murder J.M., in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2.

<u>Notice of Special Findings</u>

The grand jury repeats and re-alleges the accusations of Counts 4 and 5 of the Indictment.

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **JERRY ARMENTA**:

    a.  was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

    b.  intentionally killed J.M. (18 U.S.C. § 3591(a)(2)(A));

    c.  intentionally inflicted serious bodily injury that resulted in the death of J.M. (18 U.S. C. § 3591 (a)(2)(B));

    d.  has previous convictions of two felony drug offenses, that is: Trafficking Cocaine and Trafficking Heroin (18 U.S.C. § 3592(c)(10));

e. committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **JERRY MONTOYA**:

a. was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

b. intentionally killed  J.M. (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of J.M. (18 U.S. C. § 3591 (a)(2)(B));

d. has a previous conviction for a violent felony involving firearms, that is: Aggravated Battery With a Deadly Weapon (18 U.S.C. § 3592(c)(2));

e. committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **MARIO RODRIGUEZ**:

a. was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

b. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.M. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and  J.M. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

d. committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **TIMOTHY MARTINEZ**:

    a.   was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

    b.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.M. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    c.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and J.M. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

    d.   has a previous conviction for a violent felony involving firearms (18 U.S.C. § 3592(c)(2));

    e.   committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **ANTHONY RAY BACA**:

    a.   was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

    b.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.M. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    c.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the

offense, such that participation in the act constituted a reckless disregard for human life and J.M. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

d.  has a previous conviction for a violent felony involving firearms, that is: Armed Robbery (18 U.S.C. § 3592(c)(2));

e.  has a previous conviction of offense for which the sentence of death or life imprisonment was authorized, that is: First Degree Murder (18 U.S.C. § 3592(c)(3));

f.  committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **MAURICIO VARELA**:

a.  was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

b.  intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.M. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and J.M. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

d.  has a previous conviction for a violent felony involving firearms, that is: Aggravated Assault With a Deadly Weapon (18 U.S.C. § 3592(c)(2));

e.  has a previous conviction of offense for which the sentence of death or life imprisonment was authorized, that is: First Degree Murder (18 U.S.C. § 3592(c)(3));

f.  has previous convictions of other serious offenses (18 U.S.C. § 3592(c)(4));

  g. committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

With respect to Count 5, the Grand Jury makes the following special findings that the defendant, **DANIEL SANCHEZ**:

  a. was 18 years of age or older at the time of the offense charged in Count 5 (18 U.S.C. § 3591(a));

  b. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.M. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

  c. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and J.M. died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

  d. has a previous conviction of offense for which the sentence of death or life imprisonment was authorized, that is: First Degree Murder (18 U.S.C. § 3592(c)(3));

  e. has previous convictions of other serious offenses (18 U.S.C. § 3592(c)(4));

  f. committed the offense after substantial planning and premeditation to cause the death of J.M. (18 U.S.C. § 3592(c)(9)).

### Count 6

Conspiracy to Commit Assault Resulting in Serious Bodily Injury to J.R.

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

Starting in or about 2003, and continuing until on or about July 13, 2015, in Doña Ana County, in the District of New Mexico and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the

Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup," GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma,"** and **CONRAD VILLEGAS, a.k.a. "Chitmon,"** did unlawfully, knowingly, and intentionally conspire to commit assault resulting in serious bodily injury to J.R., in violation of NMSA 1978, Sections 30-3-5 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(6).

## Count 7

### Conspiracy to Murder D.S.

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup," ROY MARTINEZ, a.k.a. "Shadow,"** and **ROBERT MARTINEZ, a.k.a. "Baby Rob,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder D.S., in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

<u>Count 8</u>

<u>Conspiracy to Murder G.M.</u>

Paragraphs one through fourteen of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Indictment, in Santa Fe County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup," ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob,"** and **CHRISTOPHER GARCIA**, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder G.M., in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

A TRUE BILL:



_____

Assistant United States Attorney

11/30/15  3:56PM

/s/

_____

FOREPERSON OF THE GRAND JURY